**CLOSED CIVIL CASE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 12-23820-CIV-GRAHAM/GOODMAN

THE MOST REVEREND THOMAS G.
WENSKI, et al.,

    Plaintiffs,

vs.

KATHLEEN SEBELIUS, et al.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendants' Motion to Dismiss [D.E. 22].

**THE COURT** has considered the Motion and the pertinent portions of the record, and is otherwise fully advised in the premises.

### I. FACTUAL BACKGROUND

On March 23, 2010, Congress enacted the Affordable Care Act. See Pub. L. No. 111-148, 124 Stat. 119. The Affordable Care Act significantly amended the Public Health Service Act by establishing many new requirements for "group health plans," broadly defined as "employee welfare benefit plans" within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(1), that "provide[] medical care . . . to employees or their dependents." 42 U.S.C. § 300gg-91(a)(1). As relevant here, the Act requires an employer's group health plan to cover women's "preventive care." Specifically, it states that "[a] group health plan and a health

insurance issuer offering group or individual health insurance coverage shall, at a minimum[,] provide coverage for and shall not impose any cost sharing requirements for ... such additional preventive care and screenings ... as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph." Pub. L. No. 111-148 § 1001(5), 124 Stat. 131 (codified at 42 U.S.C. § 300gg-13(a)(4)). The prohibition on "cost sharing requirements" means that a qualified health plan must pay for the full cost of "preventive care" services, without any deductible or co-payment.

Plaintiffs are Catholic religious entities that provide a wide range of spiritual, educational, social and health care services to residents, both Catholic and non-Catholic alike, throughout Miami-Dade, Broward and Monroe Counties in southeast Florida. Plaintiff the Most Reverend Thomas G. Wenski ("Archbishop Wenski"), and his successor in office, is the Archbishop of the Archdiocese of Miami, (the "Archdiocese of Miami" or "Archdiocese"), a religious community inclusive of those Roman Catholic parishes and organizations located throughout Miami-Dade, Broward, and Monroe counties in Florida. The Archdiocese of Miami carries out its mission directly, and through the work of affiliated Catholic entities such as Plaintiff Catholic Health Services, Inc. ("Catholic Health Services"), and through Plaintiff Catholic Hospice, Inc. ("Catholic Hospice") (collectively, the "Miami Archdiocese Plaintiffs"). Plaintiff Catholic Health Services is a

Catholic healthcare organization headquartered in Lauderdale Lakes, Florida, whose mission is both guided by and consistent with the teachings of the Catholic Church. Catholic Health Services provides health care and related services to all, regardless of religious faith. Catholic Health Services employs more than 2,000 full-time employees. Plaintiff Catholic Hospice is a community-based, Catholic not-for-profit program headquartered in Miami Lakes, Florida, which has served the South Florida community since 1988 by providing end-of-life care to patients of all faiths.

The Archdiocese of Miami offers a health plan ("the Archdiocese Plan") to its employees that is administered through Blue Cross Blue Shield, which is not a party to this lawsuit. Plaintiff Catholic Health Services also offers coverage to its employees through the Archdiocese Plan. The Archdiocese Plan does not cover abortion-inducing drugs, sterilization, or contraceptives. Catholic Hospice offers its own health plan to its employees (the "Hospice Plan"), which is administered through Coventry Health Care of Florida, also not a party to this lawsuit. The Hospice Plan does not cover abortion-inducing drugs, sterilization, or contraceptives. Because the Archdiocese of Miami has made significant modifications to the Archdiocese Plan since March 23, 2010, Plaintiffs believe that the Archdiocese Plan does not meet the Affordable Care Act's definition of a "grandfathered plan." The Archdiocese Plan year begins on July 1. Catholic Hospice, however, believes that the Hospice Plan currently meets

the Affordable Care Act's definition of a "grandfathered plan." The Hospice Plan year begins on July 1.

The Defendants named in Plaintiffs' Complaint are Kathleen Sebelius in her official capacity as Secretary of the U.S. Department of Health and Human Services, Hilda Solis in her official capacity as Secretary of the U.S. Department of Labor, Timothy Geithner in his official capacity as Secretary of the Treasury, the U.S. Department of Health and Human Services, the U.S. Department of Labor, and the U.S. Department of Treasury (collectively, "Defendants"). Defendants have promulgated various rules (collectively, "the U.S. Government Mandate"), as part of the 2010 Patient Protection and Affordable Care Act (the "Affordable Care Act" or the "Act"), that would require many Catholic and other religious organizations to provide health plans to their employees that include and/or facilitate coverage for abortion-inducing drugs, sterilization, contraception and related counseling services in violation of their sincerely held religious beliefs. The U.S. Government Mandate is subject to an exemption (the "Exemption") for certain "religious employers."

Plaintiffs brought this action on October 19, 2012 to challenge the lawfulness of the U.S. Government Mandate, alleging that that they cannot provide health insurance covering "abortion-inducing drugs, sterilization, and contraception" without violating their "sincerely held religious beliefs." Plaintiffs claim the preventive services coverage regulations violate the Religious

Freedom Restoration Act ("RFRA"), the First Amendment to the United States Constitution, the nondelegation doctrine, and the Administrative Procedure Act ("APA"), and request that the Court enter an order declaring that the U.S. Government Mandate is contrary to same, and therefore invalid. Plaintiffs also request that this Court enjoin the Defendants from enforcing the Mandate against them.

## II. STANDARD OF REVIEW

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005). Where, as here, defendants challenge jurisdiction on the face of the Complaint, the Complaint must plead sufficient facts to establish that jurisdiction exists. This Court must determine whether it has subject matter jurisdiction before addressing the merits of the Complaint. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).

## III. DISCUSSION

Plaintiffs are not alone in their challenge to the U.S. Government Mandate. A number of district courts have addressed nearly identical challenges, with the overwhelming majority ruling

in favor of Defendants and granting dismissal.[1] The Court is aware of only two district court cases wherein Defendants' motion to dismiss for lack of subject matter jurisdiction has been denied.[2] The lone circuit court opinion considering the issue, Wheaton College v. Sebelius, et al., found that dismissal for lack of standing was erroneous, but held that the matter was not fit for review based on the government's promise that it would not enforce the mandate. 703 F.3d 551 (D.C. Cir. 2012). It is against this backdrop that the Court considers Defendants' motion.

Defendants argue that this Court lacks authority to adjudicate Plaintiffs' claims because (1) Plaintiffs have not alleged any imminent injury from the operation of the challenged regulations, and (2) this case is not ripe. Standing and ripeness present the threshold jurisdictional question of whether a court may consider the merits of a dispute. Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006). Both standing and ripeness originate from the Constitution's Article III requirement that the jurisdiction of the

---

[1] See e.g. Archdiocese of St. Louis v. Sebelius, No. 4:12-CV-00924-JAR, 2013 WL 32926 (E.D.Mo. Jan. 29, 2013); Roman Catholic Archbishop of Wash. v. Sebelius, No. 12-0815, 2013 WL 285599 (D.D.C. Jan. 25, 2013); Persico v. Sebelius, No. 1:12-CV-123-SJM, 2013 WL 228200 (W.D.Pa. Jan. 22, 2013); Christian Univ. v. Sebelius, 2013 U.S. Dist. LEXIS 2677 (D.Colo. Jan. 7, 2013); Catholic Diocese of Peoria v. Sebelius, No. 12-1276, 2013 U.S. Dist. LEXIS 1261 (C.D.Ill. Jan. 3, 2013) Univ. of Notre Dame v. Sebelius, No. 3:12CV253RLM, 2012 U.S. Dist. LEXIS 183267 (N.D.Ind. Dec. 31, 2012); Catholic Diocese of Biloxi v. Sebelius, No. 1:12CV158 (S.D. Miss. Dec. 20, 2012); Zubik v. Sebelius, No. 2:12-cv-00676, 2012 WL 5932977 (W.D. Pa. Nov. 27, 2012); Catholic Diocese of Nashville v. Sebelius, No. 3-12-0934, 2012 WL 5879796 (M.D. Tenn. Nov. 21, 2012); Legatus v. Sebelius, No. 12-12061, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012)4; Nebraska v. U.S. Dep't of Health & Human Servs., No. 4:12CV3035, 2012 WL 2913402 (D. Neb. July 17, 2012).

[2] See Roman Catholic Diocese of Ft. Worth v. Sebelius, No. 4:12-cv-00312-Y (N.D. Tex. Jan. 31, 2013); Roman Catholic Archdiocese of New York v. Sebelius, No. 12 Civ. 2542(BMC), 2012 WL 6042864 (E.D.N.Y. Dec. 4, 2012).

federal courts be limited to <u>actual</u> cases and controversies. <u>Id</u>. at 1204-05 (emphasis added).

## A. Ripeness

The ripeness doctrine addresses "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court." See <u>Elend</u>, 471 F.3d at 1211. Ripeness analysis involves the evaluation of two factors: the hardship that a plaintiff might suffer without court redress and the fitness of the case for judicial decision. <u>Id</u>.

Defendants contend that Plaintiffs' challenge to the preventive services coverage regulations is not fit for judicial review because Defendants have committed to amend the challenged regulations to accommodate the religious objections of organizations like Plaintiffs to providing contraceptive coverage. Accordingly, Defendants argue that review now would impermissibly interfere with Defendants' ongoing rulemaking and expend the parties' and the Court's resources unnecessarily - requiring the parties to brief the propriety of, and the Court to issue rulings on, two sets of regulations. In fact, it would result in an advisory decision on the regulations in their current form even though they do not and will not harm Plaintiffs in such form. Furthermore, Defendants have repeatedly asserted that (1) they will never enforce the regulations in their current form against

entities like Plaintiffs; (2) they have committed to further amend the regulations, before the rolling expiration of the safe harbor begins, to address the concerns raised by religious organizations like Plaintiffs with religious objections to providing contraceptive coverage; and (3) they have initiated a rulemaking process to do so. Despite these assertions, Plaintiffs claim that they satisfy both factors of the prudential-ripeness test because: (1) they present discrete legal challenges to a final agency action, and (2) given the present impacts on their operations, their hardships from delay would be considerable. See Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967). The harm to Plaintiffs appears limited to "uncertainty," which Plaintiffs claim affects their ability to plan, negotiate, and implement their group health insurance plans, their employee hiring and retention programs, and their social, educational, and charitable programs. While the Court can certainly respect Plaintiffs' desire for finality, it does not find that these concerns are sufficient to withstand dismissal.

The Court may consider intervening events ocurring after the filing of the Complaint when deciding whether a matter is ripe. See Henley v. Herring, 779 F.2d 1553, 155 (11th Cir. 1986). On February 1, 2013 Defendants released a notice of proposed rulemaking ("NPRM") that would amend the contraceptive coverage requirement as it applies to Plaintiffs, as well as other religious employers and eligible non-profit employers with religious objections to the contraceptive coverage requirement. Specifically,

entities like Plaintiffs; (2) they have committed to further amend the regulations, before the rolling expiration of the safe harbor begins, to address the concerns raised by religious organizations like Plaintiffs with religious objections to providing contraceptive coverage; and (3) they have initiated a rulemaking process to do so. Despite these assertions, Plaintiffs claim that they satisfy both factors of the prudential-ripeness test because: (1) they present discrete legal challenges to a final agency action, and (2) given the present impacts on their operations, their hardships from delay would be considerable. See Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967). The harm to Plaintiffs appears limited to "uncertainty," which Plaintiffs claim affects their ability to plan, negotiate, and implement their group health insurance plans, their employee hiring and retention programs, and their social, educational, and charitable programs. While the Court can certainly respect Plaintiffs' desire for finality, it does not find that these concerns are sufficient to withstand dismissal.

The Court may consider intervening events ocurring after the filing of the Complaint when deciding whether a matter is ripe. See Henley v. Herring, 779 F.2d 1553, 155 (11th Cir. 1986). On February 1, 2013 Defendants released a notice of proposed rulemaking ("NPRM") that would amend the contraceptive coverage requirement as it applies to Plaintiffs, as well as other religious employers and eligible non-profit employers with religious objections to the contraceptive coverage requirement. Specifically,

the NPRM would, among other things, (1) "amend the criteria for the religious employer exemption to ensure that an otherwise exempt employer plan is not disqualified because the employer's purposes extend beyond the inculcation of religious values or because the employer serves or hires people of different religious faiths"; and (2) "establish accommodations for health coverage established or maintained by eligible organizations, or arranged by eligible organizations that are religious institutions of higher education, with religious objections to contraceptive coverage." 78 Fed. Reg. 8456, 8459 (Feb. 6, 2013). Accordingly, the NPRM establishes Defendants' intent to amend the religious employer exemption, along with Defendants' commitment to accommodate other religious non-profit employers with religious objections to the contraceptive coverage requirement. Further, pending these changes Plaintiffs are protected from enforcement by the safe harbor. In light of this, the Court finds that Plaintiffs' claims are not ripe because they challenge regulations that are certain to change and are, in fact, in the process of changing and the Plaintiffs will suffer no hardships without judicial review. See Am. Petroleum Inst. v. EPA, 683 F.3d 382 (D.C. Cir. 2012) (holding that challenge to regulations was not ripe for review where agency issued NPRM that would amend the challenged regulations). This finding, of course, would not preclude Plaintiffs from bringing a new challenge if the new regulations do not adequately address their claims, or in the unlikely event the government does not adhere to its promises.

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [D.E. 22] is **GRANTED**.[3] Plaintiffs' Complaint is **DISMISSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th day of March, 2013.

_____
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record

---

[3] In light of its finding that this matter is not ripe for judicial review, the Court declines to address whether Plaintiffs' had standing to bring suit. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) ("Where both standing and subject matter jurisdiction are at issue, however, a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other.")